LOLLEY, J.
| j Elmer E. Prescott III appeals the judgment of the Second Judicial District Court, Parish of Claiborne, State of Louisiana in favor of Steven M. Davis. For the following reasons, we reverse the judgment of the trial court.
FACTS
In August 2006, Edward Thomas Davis died leaving five surviving children as well as a tract of immovable property in Clai *626 borne Parish (the “property”)- Shortly after his death, a petition to probate notarial testament and to appoint independent executor was filed in the 18th Judicial District Court in the Parish of East Baton Rouge by Elmer E. Prescott III (“Prescott”). Prescott, Edward Thomas Davis’s son-in-law, was appointed independent executor of the estate.
On June 19, 2007, Prescott, as independent executor of the estate, granted a three-year mineral lease of the property to AIX Energy (the “AIX lease”). Prescott did not inform the legatees prior to granting the AIX lease. In March 2008, the succession was closed placing Steven M. Davis and his four siblings in possession of the property.
Shortly thereafter, Davis entered an agreement to sell his undivided interest in the property to a company named SOTJ, LLC. Unbeknownst to Davis, SOTJ, LLC was fully owned by Prescott’s stepson Donald Scully, Jr., who offered to purchase the land anonymously through SOTJ, LLC because Scully believed that Davis would refuse to sell his interest in the property to a member of the family. Ultimately, Davis sold his interest in the property to SOTJ, LLC in two separate payments. Shortly after the last payment was made, Davis received two AIX lease royalty checks totaling |2$29,436.00 in the mail. Davis claims that the royalty payments were his first notice of the AIX lease and that his undivided interest in the property contained natural gas.
Davis filed suit against his four siblings, Scully, and Prescott in Claiborne Parish claiming that they acted fraudulently against him and that had he known of the AIX lease he would not have sold his interest in the property for so little money. Davis also claimed that Prescott breached his fiduciary duty as an executor by granting a mineral lease without first obtaining Davis’s permission. The trial court dismissed the claims against Davis’s four siblings on an exception of no cause of action. After a trial, the trial court dismissed all claims against Scully and found Prescott liable for $69,436.00 for failing to obtain consent from all legatees prior to granting a mineral lease on the property greater than one year. Subsequently, the court signed an amended judgment correcting a clerical error and changing the damages award to $40,000.00. This appeal by Prescott and answer by Davis followed.
DISCUSSION
As his first assignment of error, Prescott argues that the trial court erred by holding that La. C.C.P. art. 3226 requires a succession representative to obtain a legatee’s consent prior to entering a mineral lease on succession property for greater than one year. Specifically, Prescott claims that the first paragraph of La. C.C.P. art. 3226, which the trial court relied upon, does not apply to the granting of mineral leases. Instead, he argues, the second and third paragraphs of La. C.C.P. art. 3226, added by |sActs 1974, No. 131, § 1, govern the treatment of mineral leases and that nowhere in these substituted paragraphs, which are specific to mineral leases, is there a requirement for consent of the heirs or legatees. We agree.
Louisiana C.C.P. art. 3226, which governs the lease of succession property states:
When it appears to the best interest of the succession, the court may authorize a succession representative to grant a lease upon succession property after compliance with Article 3229. No lease may be granted for more than one year, except with the consent of the heirs and interested legatees.
The court may also authorize the granting of mineral leases on succession prop *627 erty after compliance with Article 3229. The leases may be for a period greater than one year as may appear reasonable to the court. A copy of the proposed lease contract shall be attached to the application for the granting of a mineral lease, and the court may require alterations as it deems proper.
The order of the court shall state the minimum bonus, if any, to be received by the executor or administrator of the estate under the lease and the minimum royalty to be reserved to the estate, which in no event shall be less than one-eighth royalty on the oil and such other terms as the court may embody in its order. (Emphasis added).
Prior to that, the power of a succession representative to grant a mineral lease upon succession property was originally codified in La. R.S. 9:1491 by Act 129 of 1936. The law as it then stood required an executor, administrator, heir, or creditor to petition the court for an order to lease the mineral rights of succession property and to provide notice by publication in a newspaper 10 days prior to the date of the hearing. See George A. Wilson, Recent Developments In Louisiana Oil and Gas Laws, 11 Tulane L.Rev. 553, 557 (1936-1937). Act 110 of 1948 amended La. R.S. 9:1491 and provided that only an administrator or executor may apply for court | .authorization to lease the mineral rights of succession property. However, the law still required court authorization and notice by publication to interested heirs. See Leonard Oppenheim, One Hundred Fifty Years of Succession Law, 33 Tulane L.Rev. 43, 55 (1958-1959). Finally, Acts 1974, No. 131, § 1 replaced the second paragraph of La. C.C.P. art. 3226 which then stated, “This article does not apply to the granting of mineral leases” with the language of La. R.S. 9:1491.
Louisiana adopted the concept of an independent executor through enactment of La. C.C.P. art. 3396.15, which states:
Except as expressly provided otherwise in this Chapter, an independent administrator shall have all the rights, powers, authorities, privileges, and duties of a succession representative provided in Chapters 4 through 12 of this Title, but without the necessity of delay for objection, or application to, or any action in or by, the court.
The intent behind the creation of independent executorship was to allow the succession representative to perform its duties without having to apply to the court or to obtain court approval, thereby reducing the amount of time and money required to administer the estate. See La. C.C.P. art. 3396.15, Comment (e).
Here, the record reflects that the trial court erred by relying upon the first paragraph of La. C.C.P. art. 3226 to the exclusion of the second paragraph which specifically pertains to the leasing of mineral rights. First, the language in the second paragraph of La. C.C.P. art. 3226 stating “The court may also authorize the granting of mineral leases on succession property after compliance with Article 3229. The leases may be for a period of greater than one year as may appear reasonable to the court,” indicates | legislative intent to treat mineral leases differently than surface leases. Had the legislature intended the requirement of obtaining an heir’s consent to apply to mineral leases, there would be no need for this additional verbiage in the second paragraph. Second, the history of the law pertaining to a succession representative’s authority to lease mineral rights indicates that the legislature never intended the requirement for legatee consent, contained within the first paragraph of La. C.C.P. art. 3226, to apply to a succession representative’s au *628 thority to grant mineral leases on succession property. Prior to the 1974 amendment, the language of La. C.C.P. art. 3226 specifically stated that it did not apply to the granting of mineral leases. Furthermore, the only requirements to granting a mineral lease on succession property have been court approval and a publication notifying interested parties. The consent of interested legatees or heirs has never been required in order to grant mineral leases on succession property and the present language of La. C.C.P. art. 3226 does nothing to alter these longstanding requirements. On the contrary, the present language serves to perpetuate them. As an independent executor, Prescott was not required to request permission from the court prior to granting the AIX lease, as La. C.C.P. 3396.15 absolves the independent executor from the requirement of seeking court approval. Moreover, Prescott did not breach a fiduciary duty by granting the AIX lease without first obtaining Davis’s consent. Our finding on this issue pretermits any discussion of Prescott’s remaining assignments of error, and the assignment of error raised by Davis in his answer to appeal.
| .CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court in favor of Elmer E. Prescott III. Costs of this appeal are assessed to Steven M. Davis.
REVERSED.